IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

SEP 28 2000

| | | |
|---|---|---|
| CARMEN STACY RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER |
| | ) | |
| RHODES FURNITURE COMPANY, | ) | 98-C-0608-S |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Defendant Rhodes Furniture Company, Inc., d/b/a Marks Fitzgerald Furniture

("Marks Fitzgerald") has moved for summary judgment on Plaintiff Carmen Stacy Riley's

claims of sexual harassment and retaliatory discharge as well as her tort claims under

Alabama law. Based on the undisputed facts, the motion is due to be granted.

I. Undisputed Facts

1. Carmen Stacy Riley ("Riley") worked at Marks Fitzgerald's Brookhaven

store in Birmingham, Alabama from December 14, 1995, until she transferred to one of

Defendant's stores in Pineville, North Carolina nearly a year later.

2. When Riley was hired, as a cashier, she received the "Employee

Handbook," which provides, in relevant part:



HARASSMENT

Rhodes, Inc., will not tolerate harassment of our employees. Any form of harassment related to an employee's race, color, sex, religion, national origin, age or physical or mental handicap is a violation of our policy and will be treated as a disciplinary matter. For these purposes, the term "harassment" includes, but is not necessarily limited to:

> Slurs, jokes, other verbal, graphic or physical conduct relating to an individual's race, color, sex, religion, national origin, age or physical or mental handicap. Harassment also includes unwelcome sexual advances, requests for sexual favors, and other verbal graphic, or physical conduct of a sexual nature.

Violation of this policy by an employee shall subject that employee to disciplinary action, up to and including discharge.

If you feel that you are being harassed by any other employee based upon your race, national origin, age, or physical or mental handicap, you should at once make your feelings known to your immediate supervisor. The supervisor will promptly notify the appropriate unit manager, who will see that the matter is investigated and, where appropriate, disciplinary action taken. If you do not feel that the matter can be discussed with your supervisor, you should directly contact the Vice President - Human Resources at the General Office.

3. During most of Riley's tenure at Brookhaven, Stacey McCormick was the Store Manager. When Riley transferred to the position of sales associate on April 29, 1996, McCormick became her immediate supervisor.

4. Until he learned of Riley's pregnancy in mid August 1996, McCormick showed a great deal of favoritism towards Riley on the job. He referred customers to her, which enabled her to meet her sales quota.

5. McCormick and Riley had a number of consensual sexual encounters

between April and September 1996. They had sexual intercourse in his office and in her apartment. Riley never resisted McCormick's advances; she admits that "from beginning to end," her relationship to McCormick was "consensual." Riley's Second Deposition, p. 286.

6. In mid August 1996, Riley learned that she was pregnant. She told McCormick of her pregnancy. He told her that he did not want the Company and his wife to know about the pregnancy. He asked Riley to transfer to one of the defendant's furniture stores close to her family home in Charlotte, North Carolina.

7. The McCormick-Riley affair deteriorated after McCormick learned of the pregnancy. He no longer referred customers to her, and her sales declined. On September 12, 1996, McCormick placed Riley on probation ostensibly for her failure to meet her sales quota.

8. Riley applied for a transfer to the North Carolina store. On September 16, 1996, Riley contacted Van Laird, McCormick's supervisor (who was located in Mobile, Alabama), to request moving expenses for her transfer to North Carolina. During that conversation, Riley disclosed her affair with McCormick and the fact of her pregnancy.

9. On the following day, September 17, 1996, the defendant's Vice-President, John Torre, came from the defendant's home office in Atlanta to the Brookhaven store for the purpose of meeting with Riley. During this meeting, Riley told Torre that her relationship with McCormick was consensual.

10. After Torre learned of the McCormick-Riley affair, he immediately placed

3

McCormick on leave, demoted him, and transferred him to one of the defendant's stores in Olathe, Kansas.

      11.   Riley transferred to the Pineville, North Carolina store in October 1996.

      12.   When Riley transferred to the Pineville store, she was told by the store manager that because of her pregnancy, she should work in the office, rather than on the sales floor.   Riley earned more in the office position than she would have earned as a sales associate.

      13.   Under company policy, a store manager is empowered to discharge an employee who seeks employment with a competitor without approval of the store manager.

      14.   Riley worked less than three weeks in the Pineville store.   While employed at the Pineville store, Riley sought employment at Haverty's, a competitor furniture store, without the approval or knowledge of the Pineville store manager.

      15.   Riley was subsequently discharged by the defendant.

      16.   Riley's pregnancy resulted in the birth of a son.   She is still in love with McCormick, who is still married.

      17.   McCormick was initially named as a defendant in this case.   Riley voluntarily dismissed him from the case.

      18.   Riley never filed a charge of pregnancy discrimination with the Equal Employment Opportunity Commission.

II

Based on these facts, the defendant is entitled to judgment as a matter of law on all of the plaintiff's claims.

DONE this _____27ᵗʰ_____ day of September, 2000.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON

5